## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* DIXON.

Under the evidence in this case the plaintiff was not entitled to a mandamus absolute; and the court erred in directing a verdict for the plaintiff and in granting the mandamus absolute.

MAY 22, 1914.

Mandamus. Before Judge Charlton. Chatham superior court. August 15, 1913.

James M. Dixon filed a petition for a mandamus against the Central of Georgia Railway Company, upon which the court issued a mandamus nisi. The petition set up the following case: The

plaintiff is a lumber dealer engaged in buying, selling, marketing, and shipping lumber by way of the Merchants and Miners Transportation Company and by way of the Ocean Steamship Company from Savannah, Ga., to Baltimore, Philadelphia, New York, Boston, and other ports. The docks of the Ocean Steamship Company and the Merchants and Miners Transportation Company are situated on the line of the defendant, which is a common carrier by railroad, having connection with the Atlantic Coast Line Railroad and the Seaboard Air-Line Railway. Plaintiff is constantly shipping lumber from the yards of the Seaboard Air-Line Railway and Atlantic Coast Line Railroad to the docks of the Ocean Steamship Company and the Merchants and Miners Transportation Company. It is the duty of the defendant, whenever lumber is delivered to it by either of the above-named carriers, to transport the lumber to the docks of the Ocean Steamship Company or the Merchants and Miners Transportation Company as the plaintiff directs it to be carried; but the defendant, instead of performing this public duty, refuses to receive lumber which has not previously been ordered out by the steamship companies. It refuses to receive lumber from the above-named railroad companies, unless it has previously ordered them to deliver said lumber to it. The plaintiff is ready, willing, and able to pay freights at all times, and by reason of the defendant's refusal as stated the plaintiff has suffered great loss. "In the course of business the Atlantic Coast Line Railroad receives lumber from the plaintiff and gives it a bill of lading to the Central of Georgia Railway Company, routing the same via Central Railway to the Merchants and Miners Transportation Company or the Ocean Steamship Company, as the case may be, and beyond. When the car-load of lumber is received by the Ocean Steamship Company or the Merchants and Miners Transportation Company, such company issues to plaintiff a bill of lading and charges its rate of freight to whatever point the plaintiff notifies it to ship said lumber to." The railroad carriage and the contract of carriage between the plaintiff and the railroad companies are terminated when the lumber is delivered to the steamship line, and a new contract of affreightment is made with the steamship lines. The contract of affreightment or carriage with the steamship companies is a new and independent contract from that with the railroad companies, which contract terminates with delivery to the steamship company,

at which time the original carriage is completely performed. The plaintiff prays that a mandamus nisi issue, requiring the respondent to show cause why it should not be compelled to carry such lumber, and such other lumber as is delivered to it under similar circumstances; and that a mandamus absolute issue, compelling it to carry all lumber belonging to the plaintiff and tendered to it by the Atlantic Coast Line Railroad and the Seaboard Air-Line Railway for carriage to the docks of the Ocean Steamship Company and the Merchants and Miners Transportation Company, as the case may be.

The defendant's answer, together with the evidence introduced, raised the following issues:

(1) That as to such business it is a common carrier only sub modo; that it had been accustomed and was able to carry only upon condition that lumber should not be moved except when ordered by the water-transportation company; and that it had the right to refuse to carry lumber upon the order of the shipper, and to carry it only at the will and upon the order of the water-transportation company. (2) That the grant of the relief prayed for would constitute a regulation of interstate commerce, which power is denied to the State. (3) That the superior court of Chatham county did not have jurisdiction.

At the conclusion of the evidence and after argument the court directed the jury to find in favor of the plaintiff's contentions, and upon this verdict rendered judgment of a mandamus absolute. To this judgment the respondent excepted.

*Lawton & Cunningham* and *H. W. Johnson,* for plaintiff in error.
*Osborne & Lawrence,* contra.

BECK, J. (After stating the facts.) Among other reasons urged by the respondent as to why it should not be compelled, by an order absolute in the mandamus proceeding, to accept cars of lumber tendered by the plaintiff to be transported to the docks of the steamship lines, was that at the dates of the transactions referred to in the petition, and for some years prior thereto, there was a certain rule or regulation with reference to such lumber shipments, which had been adopted and enforced by the Ocean Steamship Company, the Merchants and Miners Transportation Company, and the defendant, which rule, in effect, was that whenever an owner or consignor of lumber desired to forward shipments of

lumber from any point on the terminals of either of said railroads in Savannah to the wharves of the Merchants and Miners Transportation Company or of the Ocean Steamship Company, for transportation by either of said steamship lines, such owner or shipper must first obtain or engage freight room for his shipments from the respective steamship line. When freight room has been so obtained or engaged, the steamship line notifies this defendant that it is ready to receive such shipments. This defendant in turn thereupon notifies the railroad company, upon whose terminals such cars are located, to deliver the same, and said cars are then switched by said line and delivered to this defendant and by it switched to the wharves of the steamship company to which the same is consigned. The foregoing rule has been recognized, acquiesced in, and observed by the plaintiff and by all other shippers of lumber from the port of Savannah and by the railroads in Savannah. No lumber shipments will be received by said steamship lines from this defendant, except when delivered to them in accordance with these regulations and in the manner described.

If this rule or regulation adopted by the defendant and the other carriers referred to is a reasonable and valid rule and regulation, and not in contravention of any rule promulgated by the railroad commission or any statute, the court should have directed a verdict for the defendant, and erred in directing it for the plaintiff,—it being conceded by the parties, after the conclusion of the evidence, that a verdict should be directed either for the plaintiff or for the defendant. In the case of *Ocean Steamship Company* v. *Savannah Locomotive Works,* 131 *Ga.* 831 (63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. R. 265, 15 Ann. Cas. 1044), it was said: "A navigation company like the defendant [Ocean Steamship Company], which receives no franchise from the State to use the open sea, and which enjoys no monopoly or right of eminent domain, owes no duty to the public to furnish adequate facilities to transport all of the traffic of the ports of its termini. It is under no obligation to buy other ships, because it does not undertake to carry any more goods than its vessels will safely accommodate. If there is a demand for more ships, the commercial necessities will regulate the deficiency in transportation service, either by voluntary enlargement of the facilities of existing ship lines, or the establishment of new ones. A carrier, not a public or quasi-public institution, may select

the class of goods which he proposes to carry. Whether the right of selection may include the right to limit the quantity of any commodity he proposes to carry, provided he gives public notice of the limitation, is not before us." The enforcement of the mandamus absolute granted in this case, which, under its terms, is enforceable without regard to whether the steamship companies to whose wharves it was claimed that cars of lumber tendered to them should be carried had sufficient facilities for handling and transporting the same, would be in direct contravention of the principle announced in that part of the decision from which we have just quoted; that is, in its practical operation it would ignore and set aside that principle by compelling the steamship companies to provide ample facilities for all the lumber which should be tendered to them, however greatly it might exceed their facilities for handling and transporting the same, or it would force the defendant company to keep the cars of lumber, which it had received for transportation to the docks, in its yards for an indefinite period of time while it was paying demurrage on such cars, which would in a short time exceed the amount received by it for its switching service. Whereas, if the defendant company and the other transportation companies which were parties to the agreement, including the steamship companies, are permitted to operate under the rule of regulation which we have under consideration, the lumber may be transported with equal promptness and without danger of causing such a congestion of freight in the yards of the defendant company as would always be impending should the defendant, in obedience to the mandamus absolute or some similar order, be compelled at all times and under all circumstances to accept cars from the railway companies for transportation to the docks of the steamship lines. For if the plaintiff in this case has the right to compel the defendant company to receive and carry cars of lumber to the wharves of the steamship lines by which the shipper desires to have the lumber transported to other ports, and if he has that right at all times and at all events, as he would have if this mandamus absolute stands, every other dealer at the port of Savannah—of whom there are several—would have the same right. And such a right upon the part of the shippers of lumber would make likely the creation of a congestion at any time, which would prevent a prompt and efficient handling of freight. Counsel for defendant in error insist that under the pro-

visions of section 2756 of the Civil Code the defendant is bound to
receive the cars tendered it for the purpose of switching them to
the wharves of the steamship companies. That section provides:
"All railroad companies in this State, at the terminus or any inter-
mediate point, shall receive from the connecting road having the
same gauge all cars containing freight consigned to any point on
the road to which the same is offered, and shall transport the cars
to their destination with reasonable diligence; and any failure or
refusal to comply with this requirement shall give to the consignee,
shipper, or owner of said goods and freight a right of action against
the company so refusing, and the damages received in such action
shall not be less than ten per cent. nor more than twenty-five per
cent. of the value of the goods so refused to be received." Counsel
for plaintiff in error deny that the provisions of this section last
referred to are applicable in this case, insisting that they relate only
to freight "consigned to any point on the road to which the same is
offered," and that a car tendered under the circumstances shown
in this case and under which the plaintiff says that he has the
right to compel the defendant to accept and transport the cars,
is not consigned to any "point" on the defendant's road in the
sense in which the term "point" is used in the statute. They as-
sert that this section of the code was never intended to require a
railroad to receive at its connection in its yard car-load shipments
and switch them to another point in its yards in the same city;
contending that this is evident from the language of the code sec-
tion, the requirement of the section being that the connecting rail-
road "shall transport the cars to their destination," and that the
service which is required by this law is a transportation service and
not a mere switching or transfer service from the yard of one rail-
road to the yard of another in the same city and to the same destina-
tion. But we are of the opinion that whether this contention of
counsel for plaintiff in error be true or not, and if it must be con-
ceded that section 2756 of the code is applicable to this case, then it
should be construed in connection with another section of the code
providing that a common carrier holding itself out to the public as
such must receive all goods offered that it is able and accustomed to
carry, "upon compliance with such reasonable regulations as it
may adopt for its own safety and the benefit of the public." Civil
Code, § 2729. For it is the "undoubted right of a common carrier

to adopt and enforce, as between itself and its customers, any reasonable regulation for the conduct of its business, the purpose and effect of which is the protection of the carrier and the benefit of the public." *Miller* v. *Georgia Railroad Co.,* 88 *Ga.* 563, 569 (15 S. E. 316, 18 L. R. A. 323, 30 Am. St. R. 170). The place to which the defendant in the case was required, under the order of the court, to transfer or switch cars was not, it is clearly inferable from the record, the terminal or the freight-depot, or any one of the freight-depots of the defendant, but was the wharf or dock of a steamship line where freight for transportation by the steamship line was received for transportation to other ports. This place to which the cars were to be transferred or switched was in or contiguous to the yards of the company, it is true, and it was one where it had numerous side-tracks, but it was not a place at which it was accustomed to unload or deliver freight which had been received for transportation. The service required of it was merely the transfer of loaded cars to a point at or contiguous to the docks of the steamship line. That being true, no duty arose on the part of the defendant to the plaintiff or other shippers to accept cars of freight under the circumstances set forth in this petition, without reference to the readiness or preparedness of the steamship company to receive or handle the contents of the cars.

Under the circumstances shown by the evidence in this case, the regulation which we have under consideration is valid and reasonable, relatively to the questions raised in this controversy; and we so hold, bearing in mind that the service sought to be enforced at the hands of the defendant in this case is the transfer of cars to the docks of the steamship lines which, at the time the service is required, because of limited facilities for handling freight, may not be in a position or condition to receive, handle, or transport the freight, and that this condition may continue for a period of time as to the length of which the defendant company might have no knowledge. The regulation itself, then, being reasonable and valid, should have been upheld, and the court erred in granting an order which in effect destroyed the rule or regulation.

Of course, if in the application of the rule or regulation which we have held to be reasonable and valid either this defendant or the steamship companies should attempt to or actually discriminate against the plaintiff in this case or other shippers of lumber, such

discrimination might be made the basis of a complaint against the company guilty of such discrimination; for that would constitute a wrong cognizable and remediable by the courts.

Other questions were raised in this record; but what we have said above disposes of the case upon its merits, and it is unnecessary to deal with the other questions.

*Judgment reversed.   All the Justices concur.*